TYLER, &c.
vs.
SMITH.

---

## Tyler and others, Trustees of Eddyville, vs. Smith. Case 46.

### APPEAL FROM LYON CIRCUIT.

18m793
100 570

18bm793
ORD. PET. 109 588

1. If an individual pay money under an illegal contract—a contract against public policy—he will not be aided by law to recover it back; the maxim *in pari delicto potior conditio est defendentis* applies.
2. It is well settled law, that where a man demands money of another as his right, and the other, with a full knowledge of all the facts and of his rights, pays the money, he cannot recover it back. (2 *Burn. & Cress.* 729; 5 *Taunton,* 144.)

[The facts of the case appear in the opinion of the court. REP.]

TYLER, &c.
vs.
SMITH.

*James Harlan*, for appellants—

I shall contend that the judgment is erroneous, and should be reversed for the following reasons:

1. Assuming that the allegations of the answer are true, the plaintiff was not entitled to a judgment.

The answer charges that the defendants, the trustees, had determined not to grant licenses to keep coffee houses for the sum of $50; the plaintiff, to *induce* the trustees to grant him a license, agreed to pay $100 per year, and with full knowledge of the *law* and *facts* voluntarily paid that amount, and the same was appropriated to the improvement of the streets of the town. If, therefore, the plaintiff voluntarily paid $50 per year more than the law prescribes for the use of the town, without any mistake on his part, and knowing the purposes to which the money would be applied, and it was in fact so applied, is there any rule of law or ethics which would authorize him to recover it back?

The plaintiff voluntarily agreed to pay $100 per year for his license to keep a coffee-house. He made the proposition to *induce* the trustees to grant him a license, and voluntarily paid the money without any "coercion or dunning."

There is no rule of law to prohibit a person from making a voluntary contribution to the treasury of a town for the benefit of the local public of that town; and if he makes the contribution with full knowledge of all the facts and his legal rights, he ought not to be permitted to recover it back from the trustees of the town.

2. What is the effect of the judgment as rendered?

In my examination of the statutes, commencing with Littell's Laws of Kentucky down to and including the acts of the last session, I have found the following acts applicable to Eddyville:

1. Act of Jan. 6, 1812, 4 *Litt. Laws Ky.* 319, &c.

2. Act of Feb. 5, 1834, *Session Acts*, 1833–4, *p.* 39.

TYLER, &c.
vs.
SMITH.

3. Act of Feb. 17, 1837, *Session Acts*, 1836–7, *p.* 210.

4. Act of Feb. 23, 1846, *Session Acts*, 1845–6, *p.* 293.

Neither of these acts incorporate the town. There is no corporate name, and it seems to me that the judgment in this case is against the trustees in their individual capacity. In the judgment, after giving the names, there is added, "trustees of the town of Eddyville in their *corporate capacity.*" The words "corporate capacity" is meaningless, because there is no corporation. The words preceding "trustees of the town of Eddyville" is *descriptio personarum*, and have no legal effect.

They are then made individually responsible for the judgment when the money paid by Smith never came to their hands, but was paid to the treasurer of the town, who paid it out for the improvement of the streets. But if it had been paid to them, and they paid over to the treasurer without any notice from the plaintiff that he intended to reclaim it, the action could not be maintained. That principle was decided in the case of *Elliott vs. Swartwout*, 10 *Peters*, 137. *In that case the principle is,* "*that where a* ' *man demands money of another, as matter of right, and* ' *that other, with a full knowledge of the facts upon which* ' *the demand is founded, has paid a sum of money volun-* ' *tarily, he cannot recover it back.*" (*Page* 154.) The court refer to two English cases in support of the principle; *Morgan vs. Palmer*, 2 *Barnwell & Cres.* 729, and *Britbain vs. Dacres*, 5 *Taunton*, 154. The first of these cases was an action brought to recover back money paid for a certain *license*.

The case of *Elliott vs. Swartwout*, was to recover money exacted by the defendant, (who was the collector of customs at New York,) more than the law authorized.

The principle may be stated thus: If the money is paid *voluntarily*, with a full knowledge of the facts at the time of the payment, it cannot be recovered

back; but if it is exacted from the party against his protest, and he gives notice he intends to sue to recover it back, and it turns out that the money was illegally exacted, then the action is sustainable.

In this case, the first notice was the summons on the petition filed by the plaintiff 15th May, 1857, the last of the four payments having been made the 20th of the preceding month.

In his original petition the plaintiff does not allege that the money was exacted from him against his consent. He does not negative the voluntary payments; and the court therefore erred in overruling the demurrer to the petition. But the allegations of the answer are to be taken as true, and so regarding them, the payments were voluntarily made without coercion, and without any request from any person.

*R. W. Wake*, for appellee—

The appellee, E. Z. Smith, relies upon the act of the legislature of 1836 and 1837, (*page* 210,) giving to the trustees of the town of Eddyville the authority to grant coffee-house license. And by the provisions of said act the trustees *cannot* levy a tax on keepers of coffee-houses of less than twenty nor more than fifty dollars. But in no case, since they have been constituted a body corporate, have they had the authority granted them of charging more for the privilege of keeping a coffee-house, for the term of one year, than fifty dollars.

Now the response of the appellants is, *not* that they had the legal authority to charge the sum of one hundred dollars, but that appellee agreed to give the said sum of money. If such even was the case, the agreement is a nullity from the beginning, and they, the trustees, were the illegal custodians of the money, and therefore Smith had the right to recover the money thus wrongfully detained from him by an action for money *had* and *received*.

TYLER, &c.
vs.
SMITH.

Appellee refers to *Chitty on Contracts*, 497 with note on same, (4th American Edition.)

He also refers to *Blair &c. vs. Williams*, 4 *Littell*, 34, and *Lapsly vs. Brashears*, 4 *Littell*, 47, in which the principle is embraced, that the legal obligation of a contract consists in the legal remedy for enforcing it. *Then is this contract one which can be enforced by an action at law; and if it cannot be* so enforced, and the $100 recovered thereon, then it cannot surely be a legal defense to the suit of appellee, Smith.

It is true, that by a recent act of the legislature, the authority is given to them to grant or refuse such license, but when they *do grant* there is no authority given them to exact more than the sums specified in the act of 1836 and 1837, nor is the authority there given to allow them to regulate their charges in any other manner than that pointed out in the old act.

In view of the authority herein referred to, appellee asks that the judgment of Lyon circuit court, sustaining the appellee's demurrer to the answer of appellant, be affirmed, &c.

Judge STITES delivered the opinion of the court.

Feb. 2, 1858.

Smith brought his action against the appellants, the marshall and trustees of the town of Eddyville, to recover from them money which he alleged they had wrongfully collected from him under pretense of authority to collect tax for license to keep a coffee-house in said town.

Appellants answered, and after denying in general terms that they had wrongfully collected any money from him, stated, in substance, the following facts: That they were trustees and officers of the town of Eddyville, an l that by law the trustees had authority to grant license to keep coffee-houses within said town, on the payment of fifty dollars tax by the person applying for such license; that the granting of license was discretionary with them, and that they had refused to issue license for that sum; that Smith, with a knowledge of these facts, and in order

TYLER, &c.
vs
SMITH.

to induce the trustees to grant him license to keep a coffee-house, proposed and offered to pay for such privilege one hundred dollars *per annum*, to be paid half yearly in advance, and that the trustees accepted said offer, and granted him license for two years at that rate; that he paid two hundred dollars for the privilege or license thus allowed him, to the Marshal of the to wn, not by coercion, but freely and voluntarily, and of his own accord, in compliance with his agreement made with a perfect knowledge of the law and facts, and also that the money so paid had been expended in improving the streets, and that this was the money claimed in the petition, &c.

To this answer a demurrer was filed and sustained, and the appellants saying nothing further, a judgment was rendered against them as trustees, for one hundred and sixteen dollars, the amount of money collected over and above the legal rate of license thereon; and from that judgment they have appealed.

Whether the answer presents upon its face a sufficient bar to the action is the only inquiry to be considered. We have no hesitation in saying that it does, and that it should have been adjudged good on demurrer.

1. If an individual pay money under an illegal contract– a contract against public policy— he will not be aided by law to recover it back; the maxim *in pari delicto potior conditio est defendentis* applies

If the contract or agreement between the parties should be regarded as invalid because of its illegality, or because of its being opposed to public policy, and within that class of contracts which tend to the corruption of public functionaries, a point not now necessary to be decided, the answer nevertheless presents an insuperable obstacle to plaintiff's recovery, because it shows his knowledge of and participation in the transaction. The law in such cases leaves the parties as it finds them, and extends no help to either. The familiar maxim, *in pari delicto potior conditio est defendentis* applies.

If, however, the agreement is not liable to such objection, still the answer is good, for it avers that

the plaintiff induced the trustees to grant him the license on the terms mentioned, he being at the time well apprised of the extent of their authority and all the facts; and of his own motion promised to pay at the rate stipulated, and did voluntarily pay the several sums claimed to the marshal of the town, without coercion or compulsion.

The doctrine is well settled, that where a man demands money of another as his right, and the other, with a full knowledge of all the facts and his rights, voluntarily pays the money thus demanded, he cannot recover it back. (2 *Barn. & Cress*, 729; 5 *Taunton*, 154.)

2. It is well settled law, that where a man demands money of another as his other. with a full knowledge of all the facts & of his rights, pays the money, he cannot recover it back. (2 *Barn & Cress.* 729; 5 *Taunton,* 154.)

In the first case cited the action was brought to recover back money paid for license, and one objection was that it was a *voluntary* payment. The court did not consider it a voluntary payment, and upheld the action; but chief justice Abbott and the whole court admitted that the objection would have been good if well founded in fact. In the latter case the whole question is examined, and the principle fully recognized. And in *Elliott vs. Swartwout*, 10 *Peters*, 155, which was an action to recover back moneys from a collector, the doctrine is approved of and reference had to the cases *supra*.

Considering the answer therefore in either aspect, it results that the demurrer was erroneously sustained.

Wherefore, the judgment is *reversed*, and cause remanded with directions to overrule the demurrer to the answer, and for further proceedings not inconsistent with this opinion.